**SO ORDERED.**

**SIGNED** this 15 day of August, 2011.

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| HARRY RONALD STONE and MARY WARREN STONE, <br>     DEBTORS. | 10-05985-8-JRL <br><br> CHAPTER 11 |
| HARRY RONALD STONE and MARY WARREN STONE, <br>     Plaintiffs <br><br> v. <br><br> GATEWAY BANK & TRUST COMPANY; FIRST CITIZENS BANK & TRUST COMPANY; FIRST FARM CREDIT; FIRST VICTORIA NATIONAL BANK; PLANTATION FEDERAL; REGIONS BANK; SUNTRUST BANK; WELLS FARGO BANK; FIRST BANK; BRANCH BANKING & TRUST COMPANY; BANK OF AMERICA; MEGA FORCE STAFFING GROUP, INC. and JOHNNY EDGE, <br>     Defendants | ADVERSARY PROCEEDING NO. <br><br> 11-00006-8-JRL |

### ORDER

This matter came before the court on Harry Ronald Stone and Mary Warren Stone's

("plaintiffs") motion for summary judgment. Gateway Bank & Trust Company ("Gateway

Bank") filed a response to plaintiffs' motion and also filed a cross motion for summary judgment against plaintiffs. Regions Bank filed a response to plaintiffs' motion and joined in Gateway Bank's response to plaintiffs' motion. First Bank filed a response to plaintiffs' motion incorporating Gateway Bank's cross motion for summary judgment. Wells Fargo Bank filed a response to plaintiffs' motion and joined in support of Gateway Bank's response and cross motion. Branch Banking & Trust Company ("BB&T") filed a motion to join in Gateway Bank's response to plaintiffs' motion. Plaintiffs filed a response to Gateway Bank's cross motion. A hearing was held on July 14, 2011, in Raleigh, North Carolina.

Plaintiffs filed for relief under chapter 11 of the Bankruptcy Code on July 29, 2010. Plaintiffs instituted this adversary proceeding on January 14, 2011, seeking reformation of a deed to add Mary Warren Stone ("Mrs. Stone") as an additional grantee of real property located in Carteret County, Beaufort, North Carolina. The deed currently states that H. Ronald Stone is the sole grantee. Plaintiffs named the creditors of Harry Ronald Stone ("Mr. Stone"), whose claims in the chapter 11 case would be affected if this relief is granted, as defendants.[1] The parties each moved for summary judgment on the issues presented to the court.

### BACKGROUND

On February 29, 1996, Taylor Creek Associates, Inc. conveyed real property in Beaufort, North Carolina ("Beaufort property") to H. Ronald Stone by general warranty deed ("the deed"). The deed was properly recorded in Carteret County, North Carolina. Mary W. Stone was not listed as a grantee nor mentioned by name anywhere in the deed. Plaintiffs allege by affidavit

---

[1] Wells Fargo Bank and Gateway Bank & Trust Company may also be creditors of Mrs. Stone.

the following: The Beaufort property was intended to be conveyed to plaintiffs as husband and wife to hold as tenants by the entirety. Plaintiffs never actually saw the deed prior to filing for relief under chapter 11, and always assumed the Beaufort property was titled in plaintiffs' names. After filing for relief under chapter 11, plaintiffs discovered the Beaufort property was titled only in Mr. Stone's name. Mrs. Stone is an obligor on the promissory note, secured by a deed of trust that grants a security interest in the Beaufort property to BB&T. Mrs. Stone's name also appears on numerous other documents related to the Beaufort property.[2] The grantor of the Beaufort property alleges by affidavit that his company intended to convey the property to plaintiffs.

In conflict with plaintiffs' affidavit, Wells Fargo Bank and Gateway Bank, creditors of plaintiffs and named defendants, allege that plaintiffs made affirmative statements to Wells Fargo Bank and Gateway Bank that the Beaufort property was titled only in Mr. Stone's name. There is uncontradicted evidence that plaintiffs made five joint personal financial statements ("statements") all of which indicate that Mr. Stone is the sole owner of the Beaufort property. Specifically, Wells Fargo Bank obtained statements from plaintiffs dated September 30, 2004 and October 7, 2008. Gateway Bank obtained statements from plaintiffs dated July 18, 2005, April 25, 2006, and June 18, 2007. Each statement contained language that indicated the information contained in the statements would be relied on by creditors in deciding whether to grant or continue credit to plaintiffs. There was also language that indicated plaintiffs knew the

---

[2] Mrs. Stone's name appears on the construction contract for the home built on the Beaufort property, original engineering and architectural drawings for the home, insurance for the property, CAMA permit to build on the property, FEMA elevation certificate for the property, certificate of occupancy for the home, application to build the home, and certificate holder of the plumber's liability insurance.

importance of telling the truth in making the statements. On the September 30, 2004 statement, Mr. Stone was asked to list and describe all real property he owned and his percentage of ownership. Mr. Stone stated that he owned 100% of the Beaufort property. Mr. Stone also specifically listed other property he owned less than 100%. On the other statements Mr. Stone listed his "wholly owned property" and "partially owned property." Mr. Stone always listed the Beaufort property as his "wholly owned property." The July 18, 2005 statement was signed by both Plaintiffs. The October 7, 2008 statement was signed by neither Mr. or Mrs. Stone. The remaining statements were signed only by Mr. Stone.

Plaintiffs present evidence that the statements do not accurately reflect Mr. Stone's belief in the ownership of the Beaufort property. Mr. Stone indicated, on the statements, that three separate tracts of land, in Tarboro, Wilson, and Fayetteville, North Carolina, were owned entirely by Mr. Stone. The deeds for these tracts indicate the tracts are owned jointly by plaintiffs.

There is also uncontradicted evidence that the Carteret County Tax Department has property tax bills on file corresponding to the Beaufort property. Each of the property tax bills are public records and list Mr. Stone as the sole owner of the Beaufort property. The tax records reflect tax payments made on the Beaufort property from January 5, 2001 to January 6, 2011.

**STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## DISCUSSION

Plaintiffs seek to add Mrs. Stone as additional grantee by filing an affidavit with the register of deeds office.  Plaintiffs argue the failure to include Mrs. Stone's name as an additional grantee of the Beaufort property was a typographical error.  Pursuant to North Carolina General Statute § 47-36.1 (2010), "notice of typographical or other minor error in a deed or other instrument recorded with the register of deeds may be given by recording an affidavit."  In Green v. Crane, 96 N.C. App. 654, 658, 386 S.E.2d 757, 760 (1990), the court stated that the addition of a legal description of land was not "the correction of an obvious typographical or clerical error."  In this case, like Green, the addition of a grantee, that was not named in the original deed, is not the type of error that can be corrected through submission of an affidavit pursuant to North Carolina General Statute § 47-36.1.  Therefore, plaintiffs cannot correct this omission by filing an affidavit with the register of deeds.  Counsel for plaintiffs conceded this point at oral argument.

Plaintiffs also seek reformation of the deed to include Mrs. Stone as an additional grantee.  Plaintiffs allege that Mrs. Stone's name was left out of the deed based on mutual

mistake. Reformation is an equitable remedy available to the parties "when, because of the mutual mistake of the parties, the agreement expressed in a written instrument differs from the actual agreement made by the parties." Light v. Equitable Life Assur. Soc. of the U.S., 56 N.C. App. 26, 286 S.E.2d 868 (1982). Based on the evidence presented, the court finds as a matter of law that even if plaintiffs' evidence presents a genuine issue of material fact as to their intent, this action is barred by the applicable statute of limitations period.

      Defendants argue that plaintiffs cannot reform the deed since the applicable statute of limitations period has run. In North Carolina, an aggrieved party seeking reformation of a deed based on mutual mistake has three years to file its cause of action. N.C. Gen. Stat. § 1-52(9) (2010). Pursuant to North Carolina General Statute § 1-52(9), "relief on the ground of fraud or mistake . . . shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." Id. In Moore v. Fidelity & Cas. Co. of N.Y., 207 N.C. 433, 437, 177 S.E. 406, 408 (1934), the court stated, "actual discovery of the fraud or mistake is not always conclusive. . . . [T]he cause of action shall be deemed to have accrued from the time the fraud [or mutual mistake] was known or should have been discovered in the exercise of ordinary diligence." Whether a mistake in a deed should have been discovered through "the exercise of reasonable diligence depends upon the circumstances of each case and is ordinarily a question of fact for the jury, particularly when the evidence is inconclusive or conflicting." Grubb Properties, Inc. v. Simms Inv. Co., 101 N.C. App. 498, 501, 400 S.E.2d 85, 87 (1991). However, "where the evidence is clear and shows without conflict that the claimant had both the capacity and opportunity to discover the mistake or discrepancy but failed to do so the absence of reasonable diligence is established as a matter of law." Id. In Peacock v. Barnes, 142 N.C.

215, 218, 55 S.E. 99, 100 (1906), the court explained the importance of reasonable diligence by stating,

> A man should not be allowed to close his eyes to facts readily observable by ordinary attention and maintain for its own advantage the position of ignorance. Such a principle would enable a careless man, and by reason of his carelessness to extend his right to recover for an indefinite length of time, and thus defeat the very purpose the statute was designed and framed to accomplish. In such case a man's failure to note facts of this character should be imputed to him for knowledge, and in the absence of any active or continued effort to conceal a fraud or mistake, or some essential facts embraced in the inquiry, we think the correct interpretation of the statute should be that the cause of action will be deemed to have accrued from the time when the fraud or mistake was known or should have been discovered in the exercise of ordinary diligence.

Under North Carolina law, "it is a landowner's responsibility to exercise reasonable diligence in informing himself of the condition and extent of his property, and . . . he is therefore chargeable with knowledge of those facts that reasonable diligence would reveal." Fulcher v. United States, 696 F.2d 1073, 1077 (4th Cir. 1982) (discussing Peacock v. Barnes, 142 N.C. 215, 55 S.E. 99 (1906); Ewbank v. Lyman, 170 N.C. 505, 87 S.E. 348 (1915); and Latham v. Latham, 184 N.C. 55, 113 S.E. 623 (1922)).

Here, plaintiffs argue the statute of limitations for reforming the deed did not begin to toll until after they filed their petition for relief under chapter 11. Defendants argue that plaintiffs failed to use reasonable diligence to discover the mistake prior to filing for relief. Defendants also contend that plaintiffs had actual knowledge of the mistake based on statements made by plaintiffs to Wells Fargo Bank and Gateway Bank, and the Beaufort property's public tax records. In Grubb, the plaintiff sought reformation of a deed to change the deed's land description to include an additional 1.283 acre tract. Grubb Properties, Inc., 101 N.C. App. at 501-02, 400 S.E.2d at 87-88. The plaintiff originally purchased the real property, an apartment

complex, with the intent to convert the complex into commercial condominiums. Id. In preparing for the conversion, the plaintiff had a survey performed on the land. Id. The court stated that the plaintiff had both the capacity and opportunity to discover the mistake by comparing the deed's land description to the survey report. Id. The court concluded that the plaintiff, in preparing to sell the condominiums to the public, "had the positive duty to exercise reasonable care in describing the converted land, and its failure to take the simple steps that would have enabled it to ascertain that the 1.283 acre parcel had not been conveyed to it cannot be equated with reasonable care." Id. at 502, 400 S.E.2d at 88.

      In this case, plaintiffs had both the opportunity and the capacity to discover the mistake, and their failure to do so establishes the absence of ordinary diligence. There is uncontradicted evidence that plaintiffs made five statements over the years to acquire lines of credit or extend existing lines of credit. On each statement plaintiffs listed the Beaufort property as the sole property of Mr. Stone. He never listed the Beaufort property as "partially owned" or indicated a percentage of ownership less than 100%. Similar to the plaintiff in Grubb, plaintiffs had a positive duty to ascertain who held title to the Beaufort property since they used the Beaufort property to acquire a line of credit. Plaintiffs knew it was important to be truthful in their financial disclosures because each financial statement contained language indicating creditors were relying on their statements and it was important to tell the truth. Like the plaintiff in Grubb, plaintiffs could have discovered the mistake by reading the deed since the deed was properly recorded in Carteret County. The language of the deed clearly and unambiguously states that H. Ronald Stone is the sole grantee of the Beaufort property. A casual reading of the deed would have put plaintiffs on notice of the mistake in the deed. In addition, the public tax

records show that the Beaufort property is owned solely by Mr. Stone.  Tax payments were made on the Beaufort property as early as 2001, therefore plaintiffs had constructive notice of their tax listing.  Plaintiffs had the opportunity to discover the mistake.

Plaintiffs also had the capacity to discover the mistake in the deed.  In Moore, the plaintiff brought an action to reform a clause in certain depository bonds based on mutual mistake.  Moore, 207 N.C. at 436, 177 S.E. at 407.  The court stated that the action was barred by the statute of limitations when the plaintiff had been a student, and was also "an able and experienced business man . . . therefore, even a casual reading of the instruments at the time they were delivered would have disclosed" the mutual mistake.  Id. at 437, 117 S.E. at 408.  Here, the statements show that Mr. Stone owned several pieces of real property in North Carolina.  On the statements plaintiffs frequently distinguished between real property that Mr. Stone held as sole owner from the property that he held jointly.  Similar to the experienced businessman in Moore, Mr. Stone, as an experienced businessman and landowner, had the capacity to understand how he held his property and how to read a deed.

Plaintiffs contend that Mr. Stone believed listing himself as "sole owner" on the statements meant that his wife was also an owner because his wife owned everything that he owned.  In North Carolina, "[a] deed to husband and wife, nothing else appearing, vests the title in them as tenants by entirety."  Honeycutt v. Citizens Nat. Bank in Gastonia, 242 N.C. 734, 741, 89 S.E.2d 598, 604 (1955).  Real property owned by a husband and wife as tenants by the entirety "may not be held liable for the individual debts of either husband or wife.  However, it is liable for the obligations of both."  North Carolina Nat. Bank v. Corbett, 271 N.C. 444, 447, 156 S.E.2d 835, 837 (1967).  Listing the Beaufort property as the sole property of Mr. Stone

benefitted plaintiffs because creditors are less willing to extend credit to an individual who holds property as tenants by the entirety since that property cannot be charged with individual debts of a spouse. It would be inequitable to allow plaintiffs to benefit from listing the property as the sole property of Mr. Stone but then to also allow them to benefit from the protection offered by holding real property as tenants by the entirety. Mr. Stone's belief that his wife owned all the real property he owned does not negate the fact that plaintiffs had both the opportunity and capacity to ascertain the true ownership status of the Beaufort property in the 14 years prior to filing for relief under chapter 11. Their failure to do so establishes the absence of reasonable diligence as a matter of law. Therefore, Mr. Stone's belief that his wife owned everything that he owned is irrelevant.

In this case, the absence of reasonable diligence has been established as a matter of law. The deed was conveyed to H. Ronald Stone on February 26, 1996. The financial statements were dated September 30, 2004, July 18, 2005, April 25, 2006, June 18, 2007, and October 7, 2008. This adversary proceeding was filed on January 14, 2011, more than 14 years from the date of conveyance and more than three years from the date of all but the last financial statement. Tax payments were made on the Beaufort property as early as January 2001. Plaintiffs had three years to file their action to reform the deed from the time the mistake was known or should have been discovered in the exercise of ordinary diligence. Normally the question of whether the parties should have discovered the mistake is a question of fact unless there is uncontradicted evidence to establish the absence of ordinary diligence. The information contained in the statements and tax records is undisputed. In light of this evidence, the courts finds that plaintiffs should have discovered the mistake through the exercise of ordinary diligence prior to filing their

petition for relief.  Plaintiffs' reformation claim is barred by the statute of limitations.

Defendants also argue Plaintiffs are not entitled to relief based on section 544 of the Bankruptcy Code.  In light of the reformation action being barred by the statute of limitations, the court does not reach the merits of defendants' additional claim.

Based on the foregoing, plaintiffs' motion for summary judgment is **DENIED** and defendants' motion for summary judgment is **GRANTED**.  Because this order conclusively determines the only issue in the case, the grant of summary judgment runs in favor of all defendants.  The clerk is directed to enter a final judgment that the plaintiffs are entitled to no relief.

**END OF DOCUMENT**